United States District Court
Southern District of Texas

**ENTERED**

August 17, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HIS COMPANY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-00842 |
| | § | |
| ROBERT SCOTT STOVER, | § | |
| | § | |
| Defendant. | § | |

## OPINION & ORDER

Pending in the above-referenced cause is Defendant's Motion to Dismiss Plaintiff's Complaint. (Doc. 7.) Having reviewed the motion, Plaintiff's Response in Opposition (Doc. 11), and the relevant law, the Court is of the opinion that Defendant's motion should be DENIED.

### I. Background

The dispute in this case arises from allegations that a former employee used misappropriated trade secrets to compete with his former employer in violation of an express confidentiality agreement.

Plaintiff His Company, Inc. ("Hisco") offers a variety of goods and services to its customers, including a component part for the manufacture of body armor known as "spall cover" or "spall material." (Doc. 1 at ¶ 13–14.) This fabric-like ballistic material is the subject of a patent to which Hisco owns the rights. (*Id.* at ¶ 16) In addition to this patent, Hisco "has developed numerous trade secrets and other confidential information relating to its ballistic materials business. . . . includ[ing], but not limited to, information such as formulas, patterns, compilations, programs, devices, methods, techniques, processes, financial data, actual and potential customer data, and actual and potential supplier data, relating to its spall material, systems and methods for making that material, and customers that purchase or may purchase that

material." (*Id.* at ¶ 17.) In an attempt to protect these trade secrets, Hisco has "policies that provide for disciplinary action and/or termination of employment in the event of certain behavior by an employee, such as the unauthorized disclosure of trade secrets." (*Id.* at ¶ 19.) The company also has a "Confidentiality, Cooperation, & Release Agreement" that employees must sign. (*Id.* at ¶ 20; Doc. 1-1 at 2.)

Defendant Robert Scott Stover ("Stover") worked for Hisco for twenty-six years in a variety of positions. (*Id.* at ¶ 22.) During that time he allegedly gained knowledge of a number of Hisco's trade secrets and confidential information. (*Id.* at ¶ 24.) In September 2014, Stover left Hisco. (*Id.* at ¶ 22.) Sometime around November, Stover then founded a company with two other individuals and began selling spall material in direct competition with Hisco. (*Id.* at ¶¶ 28, 40.) In December, the parties executed Hisco's standard Confidentiality, Cooperation, & Release Agreement wherein Stover agreed "to continue to refrain from divulging, disclosing, or sharing to any other person or entity any of Hisco's confidential information . . . ." in exchange for a lump-sum payment of $16,699. (*Id.* at ¶¶ 26, 40; Doc. 1-1 at 2–3.) When Hisco later discovered that Stover was not in compliance with the Agreement, it initiated this suit for breach of contract (Count I), misappropriation of trade secrets (Count II), and fraudulent inducement (Count III). (Doc. 1 at ¶¶ 42–61.) Stover responded with the instant Motion to Dismiss (Doc. 7), which is now ripe for adjudication.

## II. Legal Standard

### A.  Federal Rule of Civil Procedure 12(b)6

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. Fed. R. Civ. P. 12(b)(6). Under the Federal Rules, a pleading must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement exists in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Although Rule 8's pleading standard "does not require 'detailed factual allegations,' it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when a court can draw the reasonable inference that the defendant is liable for the misconduct alleged based on the factual content pled." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In determining plausibility, courts first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 678. The court then assumes the truth of all factual allegations and determines whether those factual allegations allege a plausible claim. *See id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). If the facts fail to "nudge[] the[] claims across the line from conceivable to plausible, [then] the[] complaint must be dismissed." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) review, "the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken."

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

### B.  Federal Rule of Civil Procedure 9(b)

When a complaint alleges claims sounding in fraud, Rule 9(b) requires that plaintiffs plead the underlying factual circumstances with particularity. Fed. R. Civ. P. 9(b). Accordingly, "with respect to fraud and fraudulent inducement claims, at a minimum, Fed. R. Civ. P. 9(b) requires that the plaintiff 'state with particularity the circumstances constituting the fraud.' " *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (per curiam) (quoting Fed. R. Civ. P. 9(b)). This includes "allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Tel-Phonic Servs.*, 975 F.2d at 1139) (internal quotation marks omitted). Put simply, plaintiffs must plead the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citation and internal quotation marks omitted). When certain information is peculiarly within defendant's knowledge, however, the courts are more forgiving in applying Rule 9(b), finding that less detail is required in such cases. *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 02-0299, 2002 WL 32107216, at *11 (S.D. Tex. Aug. 12, 2002) (citing *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Schlik v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974); *The Cadle Co. v. Schultz*, 779 F. Supp. 392 (N.D. Tex. 1991); *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1974)).

### III. Analysis

#### A.  Misappropriation of Trade Secrets

Stover initiates his attack on the sufficiency of Hisco's complaint by taking aim at its misappropriation of trade secrets claim. Citing the Texas Uniform Trade Secrets Act ("TUTSA"), Stover argues that "TUTSA requires a plaintiff to show that the defendant (1) acquired the trade secrets through 'improper means' and then (2) disclosed them without consent." (Doc. 7 at 6.) Stover points out that Hisco's complaint "alleges that it willingly provided Defendant with the alleged Trade Secrets pursuant to his employment and to further his job duties." (*Id.* at 7.) Citing two Western District cases,[1] Stover insists that these allegations are insufficient to state a claim because they do "not assert[] that Defendant acquired any trade secrets through improper means." (*Id.*) Stover further argues that Hisco's claim also fails because the allegedly misappropriated items, information relating to spall material products, pricing and financial information, and customer information, are not "trade secrets" under TUTSA. (*Id.* at 7– 8.) Finally, Stover contends that Hisco's claims fail because it does not allege what was taken, when it was taken, what was used, when it was used, how it was used, what information Hisco has as to proof, and damages. (*Id.*)

Hisco responds that Stover's argument that misappropriation cannot occur unless the trade secret information was acquired through improper means is "absurd" because it would "allow[] a former employee to simply do as he wishes with his former employer's trade secrets following the employment relationship." (Doc. 11 at 3.) Rather, it claims, "whether pre- or post-TUTSA, the law has long been that 'a former employee may not use confidential or proprietary information or trade secrets the employee learned in the course of employment for the

---

[1] *Educ. Mgmt. Servs., LLC v. Cadero*, No. 5:14-cv-587 (W.D. Tex. Dec. 23, 2014); *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906 (W.D. Tex. Apr. 9, 2015)

employee's own advantage and to the detriment of the employer.' " (*Id.*) (citation omitted). Hisco further avers that the cases Stover relies on are easily distinguishable, pointing out that (1) both the *Tracey* and *Cadero* courts were "concerned with Section B(i) [of TUTSA], which is not presently at issue in this case," (2) the *Wellogix*[2] court did not actually state that improper means must be shown, but merely recited one way of showing misappropriation, and (3) the only duties of confidence at issue in all three cases arose from the contracts at issue in each case. (*Id.* at 4–5.) Finally, Hisco defends its trade secret allegations by citing a number of paragraphs in its complaint that "include[] relatively detailed factual allegations relating to the trade secrets and misappropriation at issue in this case." (*Id.* at 6.) Finally, it points out that Stover cites no authority for his claim that Hisco is required to allege precisely the what, when, how, and why of the trade secret misappropriation and Hisco is "not aware of any authority that requires a trade secret to be obliterated in order to state a claim." (*Id.*)

    i.    ***Whether TUTSA requires "improper means" of acquisition for liability***

       Trade secret misappropriation began as a solely common law claim, but with the enactment of the Texas Theft Liability Act ("TTLA"), the legislature provided an additional civil remedy to victims of trade secret theft as defined in the Texas Penal Code. *Beardmore v. Jacobsen*, 4:13-CV-361, 2015 WL 5530398, at *9 (S.D. Tex. Sept. 18, 2015). However, in an effort to bring Texas law in line with the "overwhelming majority of the United States" and "provid[e] a simple legislative framework for litigating trade secret issues in Texas," the Texas Legislature recently enacted a modified version of the Uniform Trade Secrets Act. Texas Bill Analysis, S.B. 953, 2013 at 1. The enrolled bill, known as TUTSA, became effective on September 1, 2013, and expressly states that it displaces both common law misappropriation and

---

[2] *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013).

TTLA claims.[3] *In re Mandel*, 578 Fed. App'x 376, 384 n.8 (5th Cir. 2014) (unpublished) (per curiam); *Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 915 (W.D. Tex. 2015).

Under TUTSA, misappropriation is defined as:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i)  used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who had utilized improper means to acquire it;

(b) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Tex. Civ. Prac. & Rem. Code § 134A.002. In contrast, at common law, there were three elements of a trade secret misappropriation claim. Importantly, these three elements were, and continue to be, frequently recited and interpreted with a subtle, but important variation that influences

---

[3] (a) Except as provided by Subsection (b), this chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.

(b) This chapter does not affect:
(1) contractual remedies, whether or not based upon misappropriation of a trade secret;
(2) other civil remedies that are not based upon misappropriation of a trade secret; or
(3) criminal remedies, whether or not based upon misappropriation of a trade secret.
Tex. Civ. Prac. & Rem. Code § 134A.007.

liability. One variation indicates that a defendant must have acquired the trade secret in a particular manner, i.e., there is only one path to liability focused on whether the means used to acquire the trade secret were improper.[4]  In other cases, however, the recitation of the elements suggests that there are two paths to liability, *either* by acquiring the trade secret through improper means *or* using or disclosing a trade secret in breach of a confidential relationship.[5] Making matters worse, although the emphasis in the first set of these cases is on the means used to acquire the trade secret, several of these cases go on to state that at common law, "[o]ne is liable for disclosure of trade secrets if (a) he discovers the secret by improper means, *or* (b) his disclosure or use constitutes a breach of confidence reposed in one who is in a confidential relationship with another who discloses protected information to him." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 876 (5th Cir. 2013) (emphasis added) (quoting *Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir. 1994) (internal quotation marks omitted).

Unfortunately, the confusion over the importance of the means of acquisition appears to have survived TUTSA's enactment. In spite of TUTSA's edict that it replaces common law, a number of opinions applying the TUTSA framework appear to conflate statutory and common law by grafting the common law elements, and interpretations of these elements, onto the statute

---

[4] These cases recite the elements of common law trade secret misappropriation as (1) existence of a trade secret; (2) that was *acquired through* a breach of a confidential relationship *or discovered by improper means*; and (3) used without authorization from the plaintiff. *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015) (emphasis added) (citation omitted). *See also Emerald City Mgmt., LLC v. Kahn*, 4:14-CV-358, 2016 WL 98751, at *18 (E.D. Tex. Jan. 8, 2016) (citation omitted); *Beardmore*, 2015 WL 5530398, at *11 (citation omitted); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149–50 (5th Cir. 2004) (per curiam) (citations omitted); *Phillips*, 20 F.3d at 627 (citations omitted); *Wellogix*, 716 F.3d at 874 (citation omitted).

[5] These cases list the elements as (1) the existence of a trade secret; (2) *a breach of a confidential relationship or improper discovery of the trade secret*; and (3) use of the trade secret. *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) (emphasis added) (citation omitted); *Hurst v. Hughes Tool Co.*, 634 F.2d 895, 896 (5th Cir. 1981) (emphasis added) (citation omitted).

without an in-depth analysis of the statutory language and structure. *See, e.g.*, *Miller v. Talley Dunn Gallery, LLC*, 05-15-00444-CV, 2016 WL 836775, at *12 (Tex. App.—Dallas Mar. 3, 2016, no pet. h.) (listing common law elements of trade secret misappropriation, then citing the language of TUTSA defining "misappropriation" in a footnote); *Tracey*, 102 F. Supp. 3d at 914 (listing only the common law elements of misappropriation but citing both a case applying Texas common law and TUTSA for the elements of trade secret misappropriation); *Emerald City Mgmt., LLC v. Kahn*, 4:14-CV-358, 2016 WL 98751, at *18 (E.D. Tex. Jan. 8, 2016) (reciting the language of TUTSA and quoting the common law elements in a parenthetical); *Educ. Mgmt. Servs., LLC v. Cadero*, No. 5:14-cv-587 (W.D. Tex. Dec. 23, 2014) (reciting the common law elements but citing TUTSA); *Capstone Associated Servs., Ltd. v. Organizational Strategies, Inc.*, CV H-15-3233, 2015 WL 9319239, at *2 (S.D. Tex. Dec. 23, 2015) (internal quotation marks omitted) (listing common law elements then quoting *Tracey* to note that TUTSA "similarly requires that a defendant acquire knowledge of the trade secret at issue through improper means."); *360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, A-14-CA-00847-SS, 2016 WL 900577, at *3 (W.D. Tex. Mar. 2, 2016) (citing *Tracey's* recitation of common law elements to define TUTSA misappropriation).

The problem with this approach is that it continues to parrot the common law elements, and a number of opinions' focus on the means of acquisition, without regard to the text or intent of the statute. It is not surprising that Stover seeks to exploit this confusion to his advantage, arguing that acquiring a trade secret through improper means is the sole path to liability under TUTSA. The Court disagrees with Stover (1) based on the text of the statute, (2) in light of TUTSA's legislative history, and (3) for policy reasons.

a.  *TUTSA's text*

The evaluation of the statute must begin by "consider[ing] the text holistically, accounting for the 'full text, language as well as punctuation, structure, and subject matter.'" *Elgin Nursing & Rehab. Ctr. v. U.S. Dept. of Health & Human Servs.*, 718 F.3d 488, 494 (5th Cir. 2013) (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993)). In this case, there are three disjunctive "ors" and five semi-colons employed in the definition of misappropriation. This construction indicates that there are multiple, equal paths to liability under the statute. *See, e.g.*, *Elgin Nursing & Rehab. Ctr.*, 718 F.3d at 494 ("The punctuation between the clauses, a semicolon, tends to suggest related but separate ideas and stands for 'or,' not 'and.' Clauses separated by a semicolon are presumed to be independent clauses.") (citation and internal quotation marks omitted); *United States v. Reece*, CRIM. 12-00146, 2013 WL 3865067, at *6 (W.D. La. July 24, 2013) (Noting that a series of three numbered paragraphs, where the first ends with a semi-colon and the second ends with a semi-colon followed by the word "or," "ordinarily suggest[s] that the three paragraphs are equal and that satisfaction of any one of the three paragraphs would satisfy the definition of the term . . . ."). This conclusion is further supported by the fact that every paragraph nested within the definition of "misappropriation" begins with a lower case word. *See, e.g.*, *Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 3:08-CV-1112-N, 2009 WL 9072606, at *4 (N.D. Tex. June 24, 2009), *aff'd sub nom. Tolbert ex rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 657 F.3d 262 (5th Cir. 2011) (noting that paragraphs beginning with lower case words indicate that the paragraphs are intended to be part of a single series connected by conjunction).

The question then is what these multiple paths of liability under TUTSA are. Here, the "ors" only appear after clause (3)(A), after clause (3)(B)(ii)(b), and after clause (3)(B)(ii)(c).

Reading these three clauses as the only paths to liability, however, would be a mistake because "[i]t is a common practice to omit conjunctive and disjunctive connectors between all items in the series except the last two." *Tolbert*, 2009 WL 9072606, at *4 (quoting *Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 509 F. Supp. 2d 752 (W.D. Wis. 2007)) (internal quotation marks omitted). "Thus, 'you must do A, B, and C' means 'you must do A and B and C.' " *Id.*

Guided by these rules of construction and in light of the numbering of the paragraphs and the placement of the "ors" and semi-colons, the Court concludes there are actually six alternative paths to liability under TUTSA:

1. acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [§ 134A.002 (3)(A)]

2. disclosure or use of a trade secret of another without express or implied consent by a person who used improper means to acquire knowledge of the trade secret; [§ 134A.002 (3)(B)(i)]

3. disclosure or use of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

    a. derived from or through a person who had utilized improper means to acquire it; [§ 134A.002 (3)(B)(ii)(a)]

    b. acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; [§ 134A.002 (3)(B)(ii)(b)]

    c. derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or [§ 134A.002 (3)(B)(ii)(c)]

4. before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. [§ 134A.002 (3)(B)(iii)]

As indicated by the construction of § 134A.002 (3)(B)(ii), there are three ways a party can be liable when they knowingly disclose or use a trade secret without consent, including when he gained knowledge of the trade secret "under circumstances giving rise to a duty to maintain its

secrecy or limit its use." § 134A.002 (3)(B)(ii)(b). *See also Emerald City Mgmt.*, 2016 WL 98751, at \*19 ("There is a fact issue as to whether Kahn 'at the time of disclosure or use, knew or had reason to know that [his] knowledge of the trade secret was:' (1) 'acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;' or (2) 'derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.' ") (quoting Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b)-(c)). Importantly to the case at bar, this provision makes no mention of acquiring the trade secret through "improper means."

### b.  *Intent*

The Court's conclusion that there are six paths to liability under TUTSA, at least one of which does not require that the trade secret be acquired by improper means, is further buttressed by the legislative history. The Texas Bill Analysis for Senate Bill 953, which amended the Civil Practice and Remedies Code by codifying TUTSA therein, states:

S.B. 953 defines "misappropriation" as one of the following acts:

- acquisition of another's trade secret by a person who knows or has reason to know that the trade secret was acquired by improper means, including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means;

- disclosure or use of a trade secret of another without express or implied consent by a person who used such improper means to acquire knowledge of the trade secret;

- *disclosure or use of a trade secret of another without express or implied consent by a person who, at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret* was derived from or through a person who had utilized such improper means to acquire it, *was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or* was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

- disclosure or use of a trade secret of another without express or implied consent by a person who, before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Texas Bill Analysis, S.B. 953, 2013. (emphasis added). The recitation of the elements of a misappropriation claim in the Bill Analysis match the structure of the statute and the Court's conclusion that under path three, there are three ways a party can be liable when he knowingly disclose or use a trade secret without consent, including when he gained knowledge of the trade secret "under circumstances giving rise to a duty to maintain its secrecy or limit its use."

### c. *Policy*

Finally, policy favors the Court's reading. As Hisco correctly notes, Stover's arguments essentially boil down to the proposition that, under TUTSA, a former employee may "simply do as he wishes with his former employer's trade secrets following the employment relationship," so long as those trade secrets were not acquired improperly. Such a reading of TUTSA flies in the face of well recognized notions of the purpose of trade secret law. Indeed, Stover's proposed reading would eviscerate trade secret law, destroying the value of confidentiality agreements and allowing former employees to run amok with information that employers have invested great sums of money and manpower to develop and keep confidential.

### ii. Whether Hisco has alleged that Stover had a duty not to disclose

Under the Court's reading of the statute, Stover's argument that Hisco's misappropriation claim can survive only if the complaint alleges that Stover obtained the alleged trade secrets through improper means fails. As already discussed, under TUTSA, Hisco need only allege that Stover falls within one of the six alternative paths to liability. As Hisco correctly notes, Section B(ii)(b) makes no mention of improper means. Accordingly, to lodge a claim under this section, Hisco need only allege facts that show Stover disclosed or used a trade secret which he knew

was disclosed to him under circumstances giving rise to a duty to maintain its secrecy or limit its use.

"Certain duties, apart from any written contract, arise upon the formation of an employment relationship." *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21–22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (citation omitted). "One of those duties forbids an employee from using confidential or proprietary information acquired during the relationship in a manner adverse to the employer." *Id.* at 22. *See also Emerald City Mgmt.*, 2016 WL 98751, at *19 (citation omitted); *360 Mortg. Grp.*, 2016 WL 900577, at *5 (citations omitted). This obligation survives termination of employment. *T-N-T Motorsports*, 965 S.W.2d at 22; *360 Mortg. Grp.*, 2016 WL 900577, at *5. Although a former employee may use the general knowledge, skills, and experience acquired in an employment relationship, even when competing with a former employer, he may not use confidential or proprietary information or trade secrets the employee learned in the course of employment for the employee's own advantage and to the detriment of the employer. *Norwood v. Norwood*, 2-07-244-CV, 2008 WL 4926008, at *8 (Tex. App.—Fort Worth Nov. 13, 2008) (citations omitted). Moreover, "[w]hen a claim of improper disclosure or use of trade secrets arises from a confidential relationship, the injured party is not required to rely upon an express agreement that the offending party will hold the trade secret in confidence." *T-N-T Motorsports*, 965 S.W.2d at 22 (citation omitted). *See also Tendeka, Inc. v. Glover*, CIV.A. H-13-1764, 2015 WL 2212601, at *13 (S.D. Tex. May 11, 2015). "However, the employer must show that the information was, in fact, a trade secret." *T-N-T Motorsports*, 965 S.W.2d at 22 (citations omitted).

Here, Hisco alleges that Stover is a former employee of Hisco and recently began using trade secret information acquired during his employment to compete with Hisco. (Doc. 1 at ¶¶

21–26, 28–40, 49, 50.) This is sufficient to state a claim under § 134A.002 (3)(B)(ii)(b) of TUTSA.

### iii.   Whether Hisco has alleged the existence of trade secrets under TUTSA

Stover next attacks the sufficiency of Hisco's complaint by arguing that nothing he allegedly misappropriated is a "trade secret" as defined by TUTSA. (Doc. 7 at 7–8.) With regard to Hisco's allegations that the spall material products and pricing and financial information constitute trade secrets, Stover argues that because Hisco has not alleged what product or pricing information was taken, how it was used, when it was used, and what loss Hisco sustained as a result of the alleged misappropriation Hisco's claim fails. (*Id.*) In response to Hisco's allegations that customer information was misappropriated, Stover cites the statutory definition of "trade secret" and argues that "TUTSA does not prohibit the use of customer information, but instead of [sic] a 'list of actual or potential customers.' " (*Id.* at 8.) According to Stover, Hisco's claim fails because it "does not allege[] that any list of customers was taken, where the list was kept prior to it being taken, how it was used by Stover or others to Hisco's detriment and how if any, the alleged use of any such list caused any damage whatsoever." (*Id.*) Stover also points out that the market of customers who use spall products are limited and lists of them are readily available. (*Id.*) Finally, Stover contends that Hisco did "nothing to protect any such alleged trade secrets and has not alleged it did so" as is required to state a claim. (*Id.* at 8–9.)

Hisco responds that Stover "cites no authority for the proposition that a complaint must allege precisely 'what [was] taken, when it was taken, what was used and when it was used, how it was used, what information they have as to the proof . . .' etc., in order to meet the notice pleading standard for a misappropriation claim." (Doc. 11 at 6.) (alteration in original). Nevertheless, Hisco continues, its "Complaint includes relatively detailed factual allegations

relating to the trade secrets and misappropriation at issue in this case" and Stover does not cite any legal precedent for the proposition that it must state every detail of its trade secrets in its complaint. (*Id.*)

Under TUTSA, a trade secret is defined as: "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, or list of actual or potential customers or suppliers, that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Tex. Civ. Prac. & Rem. Code § 134A.002(6). Under Texas law, "[i]tems such as customer lists, pricing information, client information, customer preferences, and buyer contacts may be trade secrets if they meet the criteria for such." *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 916 (S.D. Tex. 2015) (citations omitted). One such criterion is "that a trade secret be 'secret,' i.e., that it be neither generally known by others in the same business nor readily ascertainable by an independent investigation." *Id.* at 915 (citing *Zoecon Indus. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983). *See also Carson Prods. Co. v. Califano*, 594 F.2d 453, 461 (5th Cir. 1979) (citations omitted) ("it is elemental that 'the subject matter of a trade secret must be secret.' "). Because of this requirement, "the owner of a trade secret must take reasonable measures to prevent it from becoming known to persons other than those permitted by the owner to have access for limited purposes." *Byrne*, 123 F. Supp. 3d at 915 (citing *J.C. Kinley Co. v. Haynie Wire Line Serv., Inc.*, 705 S.W.2d 193, 198 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.)).

When determining whether a customer list is a trade secret under Texas law, courts look

to (1) the steps, if any, an employer took to maintain the confidentiality of the customer list, (2) whether a departing employee acknowledges that the customer list is confidential, and (3) whether the content of the list is readily ascertainable. *360 Mortg. Grp.*, 2016 WL 900577, at *3 (citing *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003)). Although a customer list of readily ascertainable names and addresses will not ordinarily be protected as a trade secret, it may be if compiling the information was difficult and expensive. *Id.* at *4. Similarly, a number of Texas and Southern District of Texas courts have held that readily available information will be protected when the competitor obtained it working for the former employer. *Id.* (citing *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 626 (S.D. Tex. 2011); *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 632 (Tex. App.—Houston [14th Dist.] 1992, writ denied)); *Byrne*, 123 F. Supp. 3d at 920 (citation omitted).

Here, although Hisco does not use the term "customer list," the Court concludes that Hisco's allegations that "confidential customer information," including "identities, product needs, quantity demands, pricing, margins, and timing demands" (Doc. 1 at ¶¶ 17, 36) are sufficient to state a claim. This is precisely the type of confidential customer information that one would expect to be included in a "customer list." Whether lists of spall-material purchasers are available online, the additional information regarding these customers' quantity, pricing, and timing demands is not the type of information that is readily ascertainable. Moreover, Hisco clearly alleges that Stover's knowledge of this information was gained during his employment with the company. (*Id.* at ¶ 24.) The Court also agrees with Hisco that there is no requirement that Hisco's trade secret claims must meet a heightened pleading standard. Hisco's allegations are indeed "relatively detailed" in this case, well above minimum-sufficiency standards for a misappropriation claim. Finally, Hisco has alleged that it has taken steps to protect and maintain

the secrecy of its trade secrets, including by making employees aware of confidentiality requirements in an employee handbook and requiring Stover to sign a confidentiality agreement. (*See id.* at ¶¶ 18–20, 25, 26.) Hisco has sufficiently alleged the elements of its claim as required by TUTSA. Accordingly, the Court declines to dismiss Hisco's misappropriation of trade secrets claim.

## B. Fraudulent Inducement

Stover also challenges the sufficiency of Hisco's fraudulent inducement claim arguing that "[a]ll of the allegations asserted to support a fraud claim are nothing more than conclusory statements," which "do not support claims of fraud under Fed. R. Civ. P. 9(b)." (Doc. 7 at 10.) Specifically, Stover argues that Hisco "has failed to allege, other than in conclusory fashion, what representations were made, what was said, by whom and to whom, when, and the exact content of each such misrepresentation alleged that Plaintiff relied upon to enter into this confidentiality agreement." (*Id.* at 10–11.) Stover also insists that "there is no allegation of any fact supporting the element of reliance or any of the elements of fraud in the inducement other than mere conclusory statements." (*Id.* at 11.) Hisco responds by reciting paragraphs of its complaint in which it alleges the elements of fraudulent inducement, as well as the "who, what, when, where, and how" required of Fed. R. Civ. P. 9(b), are adequately pled. (Doc. 11 at 7.)

"Fraudulent inducement is a particular species of fraud that requires proof of the common law elements of fraud and the existence of a contract between the parties." *Omni USA, Inc. v. Parker-Hannifin Corp.*, CIV.A. H-10-4728, 2012 WL 1038642, at *4 (S.D. Tex. Mar. 27, 2012) (quoting *Allen v. Devon Energy Holdings, LLC*, No. 01-09-00643-CV, 2011 WL 3208234, *6 (Tex. App.—Houston [1st Dist.] July 28, 2011), *op. withdrawn and superseded on reh'g by*, *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.]

2012)) (internal quotation marks omitted). Under Texas law, "the elements of fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury." *Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P.*, 12 F. Supp. 3d 980, 992 (S.D. Tex. 2014) (quoting *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990)) (internal quotation marks omitted). As regards fraudulent inducement, "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) (citation and internal quotation marks omitted). Because fraudulent inducement requires a contract, in order to prove it, "the elements of fraud must be established as they relate to an agreement between the parties." *Id.* at 798–99.

In this case, the Court agrees with Hisco that it has pleaded facts in support of its claim. The allegations in paragraphs 40, 41, 57–61 and Exhibit A clearly lay out the elements of the alleged fraudulent inducement and meet 9(b)'s heightened pleadings requirements: the parties had an agreement; Stover made a material and false representation to Hisco in promising to refrain from "divulging, disclosing, or sharing to any other person or entity any of Hisco's confidential information"; when the representation was made Stover knew it was false but made it anyway; Stover intended that Hisco act upon his representation; Hisco did in fact act in reliance upon the representation, and Hisco thereby suffered injury. (*See* Doc. 1 at ¶¶ 40, 41, 57–61 and Ex. A.) Stover's request to dismiss Hisco's fraudulent inducement claim must be denied.

**C.  Breach of Contract**

Finally, Stover attacks Hisco's claim for breach of contract. Stover initially avers that there is no valid, enforceable contract as required for a breach of contract claim because the consideration given to Stover in exchange for the parties' confidentiality agreement was payment of a bonus that Stover "had already earned during his employ and that Plaintiff had not paid." (Doc. 7 at 12–13.) Stover further argues that there is no allegation of breach and "the 'who, what when, where and how' are completely missing from any factual allegations of the Plaintiff." (*Id.* at 13.) Stover claims the "what" and "when" are of particular importance because Hisco "has no actual proof that any of its confidential information was ever disclosed or used in any way" and "the allegedly confidential information was not subject to confidentiality until *three months after* Stover left his employment and there can be no breach of an agreement *before* an agreement is entered." (*Id.*) Finally, Stover claims that Hisco's complaint fails to articulate the causal relationship between each alleged breach and the damage created. (*Id.*)

Hisco responds that its "factual allegations are more than sufficient to state a claim for breach of contract," pointing out that Stover "cites no authority for his apparent contention that a contract claim is subject to heightened pleading standards." (Doc. 11 at 8.) Hisco also notes that Stover "cites no authority for his suggestion that he owed no duty of confidentiality to Hisco until the Agreement was made." (*Id.*) Finally, Hisco avers that Stover "contradict[s] himself by readily admitting that 'consideration [was] given to the Defendant in exchange for his agreement . . . .' " (*Id.*) (quoting Doc. 7 at 13.)

In Texas, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by plaintiff; (3) breach of contract by defendant; and (4) damages. *Perry v. U.S. Bank, N.A.*, CIV.A. H-13-3362, 2014 WL 3407077, at

*3 (S.D. Tex. July 9, 2014) (citing *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). The elements of a valid and enforceable contract under Texas law are (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent that it be mutual and binding on both parties; and (6) consideration. *Id.* (citing *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.—Dallas 2006, no pet.)).

Initially, the Court notes that breach of contract claims are generally not subject to Fed. R. Civ. P. 9(b). *See, e.g.*, *Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 976 n.5 (S.D. Tex. 2014) (noting that the heightened pleading requirements of Rule 9(b) do not generally apply to breach of contract claims); *Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 692 (E.D. Tex. 2009) (same). Secondly, although Stover is correct that past consideration cannot be considered consideration for a present contract, *Lopez v. Sanchez*, 05-14-01108-CV, 2015 WL 7717218, at *3 (Tex. App.—Dallas Nov. 30, 2015, no pet.) (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659–60 (Tex. 2006)), his claim that the money he received in consideration for the agreement was for past services is not a 12(b)(6) argument and is inappropriate at this stage of the proceedings. At this point, the question is whether Hisco's complaint (and the exhibit attached thereto) contains factual allegations that allow the Court to reasonably infer that Stover is liable for the conduct alleged. In this case, Exhibit A clearly states that consideration was paid for Stover's agreement "to continue to refrain from divulging, disclosing, or sharing to any other person or entity any of Hisco's confidential information . . . ." (Doc. 1-1 at 2.) The Agreement goes on to state that Stover "is not entitled to and would not receive these monies and benefits except for [his] execution of this Agreement and fulfillment of promises contained herein." (*Id.*) The Court concludes that this is sufficient to allege the

existence of a valid, enforceable contract. With regard to the final elements that Stover argues

Hisco "has wholly failed to plead," breach and damages, the Court agrees with Hisco that its

complaint contains factual allegations that are more than sufficient to state a claim for breach of

contract. (*See, e.g.*, Doc. 1 at ¶¶ 27, 29–41, 45–47.) As a result, Stover's 12(b)(6) request is

denied on Hisco's breach of contract claim as well.

### IV. Conclusion

For the foregoing reasons it is hereby

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 7) is

**DENIED**.

SIGNED at Houston, Texas, this 15th day of August, 2016.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE